*389 Desmond, J. (dissenting).
We are, of course, not examining into the motives or purposes of the “ Third Party ” (Psaty & Fuhrman, Inc., herein called “ Psaty ”) nor are we determining whether what Psaty did was for the benefit of the general situation and for the purpose of getting the job finished. The single narrow issue is: did Psaty violate the injunction contained in the third-party subpoena (Civ. Prac. Act, § 781) served on it on June 11, 1956? The Referee and Special Term and the Appellate Division all answered “ yes ” to that question. Unless we can say that there is no evidentiary basis at all for that finding of fact we, limited in jurisdiction as we are, must affirm the contempt adjudication.
The injunctive clause of the subpoena served on Psaty ordered Psaty not to “ pay over or otherwise dispose of any moneys due or to become due to ” Monarch Concrete Corporation, which was the judgment debtor of respondent Cosmopolitan Mutual Insurance Company. After and despite the service of that writ on June 11, 1956, Psaty paid direct to Monarch about $41,000 (an amount far in excess of Cosmopolitan’s judgment against Monarch) and paid to Monarch’s suppliers about $16,000. The Referee, affirmed by Special Term and the Appellate Division, has found as fact that these payments were not loans or trust fund dispositions but were the property of debtor Monarch when paid by Psaty, and that, accordingly, they violated the injunction. Unless this finding was wrong, absolutely and as matter of law, we cannot reverse it. The record does not permit such a reversal.
Proof of the payments by Psaty to Monarch and to the latter’s creditors after June 11, 1956 established, prima facie, violations of the injunction. The explanations offered by Psaty fail to overcome this showing—indeed, they confirm it. We will assume that Monarch had, prior to January 10, 1956, been overpaid by Psaty on the former’s performance of its subcontract with the latter and that the subcontract was still in part unperformed. But, regardless of that, the payments made to Monarch by Psaty after the service of the injunction were, as the voucher notations themselves said: “ pursuant to your letter dated 1/10/56.” By that January 10,1956 letter Monarch had agreed to continue performance of its subcontract on condition that Psaty advance moneys for Monarch’s payrolls and pay Mon *390 arch’s bills and charge all such amounts “ against the payments, if any, which might otherwise become due to ” Monarch ‘ ‘ in the ordinary course. ’ ’ Monarch continued the work, Psaty made the payments. How can it be said that as matter of law such payments made after the injunction date were not “ moneys due or to become due ” to Monarch?
As the Appellate Division pointed out, Psaty could have moved the court to modify or vacate the injunction or could have sought judgment creditor Cosmopolitan’s consent to the payments. Instead, Psaty by choice failed to inform Cosmopolitan of the payments or of the agreement under which they were being made. To quote the Appellate Division majority: “ A party who cavalierly chooses to ignore an injunctive order, regular on its face, must accept the consequences if the order is sustained ”.
The order appealed from should be affirmed, with costs.
Judges Fuld, Froessel and Burke concur with Judge Van Voorhis ; Judge Desmond dissents in an opinion in which Chief Judge Conway and Judge Dye concur.
Order reversed, with costs in all courts, and matter remitted to Special Term for further proceedings in accordance with the opinion herein.